UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America,<br><br>             Plaintiffs,<br><br>     v.<br><br>Shallya Kumar Sharma,<br><br>             Defendants. | No. 2:15-CR-00051-KJM<br><br>ORDER |

Defendant Shallya Kumar Sharma moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A), citing his vulnerability to COVID-19 as a 47-year-old man suffering from Type II diabetes. *See* Mot., ECF No. 101; Reply, ECF No. 106. The government opposes Sharma's motion principally based on the applicable § 3553 factors; it does not contest that his health conditions place him at greater risk of developing severe symptoms if he contracts COVID-19 or that inmates and staff at FCI Sheridan where Sharma lives have contracted COVID-19. *See generally* Opp'n, ECF No. 104. As explained in more detail below, the motion is **granted**.

**I.    BACKGROUND**

Mr. Sharma pleaded guilty to one count of concealment of bankruptcy assets, in violation of 18 U.S.C. § 152(1). Plea, ECF No. 60. He was sentenced by the previously assigned district judge to 46 months' imprisonment, followed by a 24-month term of supervised release, with a $100 special assessment, $10,000 fine, and $587,459.42 in restitution. *See* Judgment &

1 Commitment, ECF No. 87; Sentencing Hr'g Mins., ECF No. 86.  As of August 19, Mr. Sharma
2 had served 22 months and 16 days, or 57.4 percent of his statutory term.  Public Inmate Data,
3 Opp'n Ex. 1 at 4, ECF No. 104-1.  As of this writing he has completed 25 months and 18 days of
4 his 46-month sentence.

5   The Presentence Investigation Report (PSR) indicated Mr. Sharma was diagnosed with
6 Type II diabetes in Sacramento in 2004 and continued to suffer from the illness at the time of
7 sentencing.  PSR ¶ 62, ECF No. 80.  Defendant has provided copies of his Bureau of Prisons
8 (BOP) medical records, which reflect that he still suffers from Type 2 diabetes mellitus, which is
9 a chronic condition.  Mot., Ex. A at 2.[1]  Notes in defendant's BOP medical file indicate his ability
10 to follow a diabetes management diet or exercise properly to care for himself is compromised by
11 pandemic-related restrictions imposed at his facility.  *See* Mot. at 3; Mot. Ex. A.

12   Mr. Sharma is residing at the Federal Correctional Institution in Sheridan, Oregon (FCI
13 Sheridan), *see generally* Public Inmate Data, with a projected release date of January 9, 2022.
14 Defendant represents he lives in "dorm style housing units" with up to forty-eight other inmates
15 living "less than 4 feet from each other," making it "impossible" to practice social distancing in
16 these conditions and "remain at least six feet from others."  Pro Se Mot. at 4, ECF No. 97.  While
17 the government does not dispute defendant's description of his living space, it takes the position
18 that FCI Sheridan inmates and staff follow strict guidelines, including rules calling for mandatory
19 wearing of masks.  Opp'n at 4.

20   Defendant moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A).  *See* Pro Se
21 Mot., ECF No. 97; Mot., ECF No. 101[2]; Reply, ECF No. 106.  The government opposes his
22 motion.  *See generally*, Opp'n, ECF No. 104.

---

[1] The court grants Sharma's request to file this exhibit under seal to protect his private medical information.  *See Chester v. King*, No. 1:16-cv-01257, 2019 U.S. Dist. LEXIS 154413, at *5 (E.D. Cal. Sep. 10, 2019) ("This court, and others within the Ninth Circuit, have recognized that the need to protect medical privacy qualifies as a 'compelling reason' for sealing records.").

[2] Defendant initially filed his motion in pro per, but then was appointed counsel; his counsel supplemented the original motion with the filing cited here.

## II. LEGAL STANDARD

A sentencing court has authority to modify a term of imprisonment under 18 U.S.C. § 3582(c)(1)(A). Under that statute, as amended by the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), the court may grant a defendant's motion to reduce her term of imprisonment, provided the defendant has first satisfied an exhaustion requirement, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," if "extraordinary and compelling reasons warrant such a reduction," and if "a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. §§ 3582(c)(1)(A), 3582(c)(1)(A)(i).

Many years ago, before the First Step Act and before defendants could move to reduce their sentences under § 3582, the Sentencing Commission issued a policy statement addressing what qualifies as "extraordinary and compelling reasons" under § 3582. *See* U.S.S.G. § 1B1.13. The same Guidelines section also "imposes an additional consideration of whether the defendant is a danger to the safety of any other person or to the community." *United States v. Numann*, No. 3:16-CR-00025-TMB, 2020 WL 1977117, at *2 (D. Alaska Apr. 24, 2020) (citing U.S.S.G. § 1B1.13(2)).

Since the First Step Act was passed, district courts have disagreed about whether the Sentencing Commission's statement is binding. Some courts have determined that the statement "no longer fits with the statute," *United States v. Cantu*, 423 F. Supp. 3d 345, 351 (S.D. Tex. 2019), because it does not account for a defendant's ability to move for compassionate release, *see United States v. Allen*, No. 2:17-CR-0229-TOR-12, 2019 WL 6529113, at *2 (E.D. Wash. Dec. 4, 2019); *see also United States v. Willingham*, No. CR113-010, 2019 WL 6733028, at *2 (S.D. Ga. Dec. 10, 2019) (noting "[i]n at least four judicial districts, courts have determined that the First Step Act signaled an intent from Congress that district courts may now consider whether extraordinary and compelling reasons for compassionate release exist other than those delineated in U.S.S.G. § 1B1.13 n.1" (citations omitted)). District courts within the Ninth Circuit have concluded the Guidelines are no longer limiting and the sentencing court has complete discretion to decide what counts as "extraordinary and compelling" reasons. *See, e.g.*, *United States v.*

1    *Rodriguez*, No. 17-cr-00021-WHO-1, 2019 WL 6311388, at *7 (N.D. Cal. Nov. 25, 2019) ("This
2    court follows the growing number of district courts that have concluded that, in the absence of
3    applicable policy statements, courts can determine whether any extraordinary and compelling
4    reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant compassionate
5    release."); *United States v. Chan*, No. 96-cr-00094-JSW-13, 2020 WL 1527895, at *4–5 (N.D.
6    Cal. March 31, 2020) (noting split in authority and following *Rodriguez*); *United States v. Parker*,
7    No. 2:98-CR-00749-CAS-1, 2020 WL 2572525, at *8–9 (C.D. Cal. May 21, 2020) (collecting
8    cases finding U.S.S.G. § 1B1.13 is no longer limiting but considering the policy statement as
9    guidance).

10   At the same time, many courts in this circuit still turn section 1B1.13 for "guidance on the
11   'extraordinary and compelling reasons' that may warrant a reduction in sentence." *United States*
12   *v. Esparza*, No. 1:07-CR-00294-BLW, 2020 WL 1696084, at *2 n.2 (D. Idaho Apr. 7, 2020)
13   (quoting *United States v. Gonzalez*, No. 2:18-CR-0232-TOR-15, 2020 WL 1536155, at *2 (E.D.
14   Wash. March 31, 2020)); *see also Riley v. United States*, No. C19-1522 JLR, 2020 WL 1819838,
15   at *8 (W.D. Wash. Apr. 10, 2020) ("In the absence of contrary controlling authority, and given
16   the limited statutory exceptions to the general rule of the finality of judgments, this court will
17   continue to follow the guidance of the Sentencing Commission's policy statement limiting the
18   scope of "extraordinary and compelling reasons" that warrant compassionate release under §
19   3582(c)(1)." (citing *Dillon v. United States*, 560 U.S. 817, 827 (2010))), *appeal filed*, No. 20-
20   35334 (April 13, 2020).

21   This court has looked to the Sentencing Commission's policy statement as guidance in
22   several previous orders and will do the same here, *see, e.g.*, *United States v. Schweder*,
23   No. 11-00449-KJM, 2020 WL 5257598, at *3 (E.D. Cal. Sept. 3, 2020); the court need not decide
24   whether that statement is binding.

25   **III.   ANALYSIS**

26   The parties do not dispute that Mr. Sharma has exhausted his administrative remedies as
27   required by § 3582(c). *See* Opp'n at 3, ECF No. 104. The court thus considers (A) whether Mr.
28   /////

Sharma has demonstrated his motion is supported by extraordinary and compelling reasons and (B) whether applicable sentencing factors of § 3553(a) support his motion.

### A.   Extraordinary and Compelling Reasons

People living in congregate living situations are vulnerable to coronavirus because the virus is highly contagious in closed environments. *See* Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities, U.S. Centers for Disease Control and Prevention, Oct. 21, 2020).[3] This court previously has found "[t]he combination of custody, housing, education, recreation, healthcare, food service, and workplace environments within one physical setting makes for unique challenges in controlling the spread of coronavirus." *United States v. Terraciano*, No. 2:17-CR-00187-KJM-2, 2020 WL 5878284, at *3 (E.D. Cal. Oct. 2, 2020). As in *Terraciano*, in this case the government argues the BOP has "taken steps" to "try to protect inmates' and employees' health" in an attempt to keep COVID-19 out of its facilities, but acknowledges the BOP has "not been immune from the COVID-19 pandemic." Opp'n at 3–4, ECF No. 104. Thousands of inmates and staff have tested positive for COVID-19, and although thousands have recovered, more than 100 persons have died. *Id*. at 4.

In the Sheridan, Oregon facility where Mr. Sharma is housed, 1 staff member and 5 inmates have tested positive for COVID-19 as of November 9.[4] Since defendant filed his motion, an additional staff member tested positive.[5] In another prior case, this court expressed concerns the number of "confirmed cases of COVID-19 at FCI Sheridan may simply be an indication of how much testing had been conducted or not" noting "zero confirmed cases is not the same as zero COVID-19 cases." *United States v. Bradley*, No. 2:14-CR-00293-KJM, 2020 WL 3802794,

---

[3] https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last accessed November 17, 2020).

[4] *Compare* Bureau of Prisons, "COVID-19 Cases," available at https://www.bop.gov/coronavirus/ (visited Nov. 9, 2020) (reporting 1 staff positive and 5 recovered cases among inmates) *with* Opp'n at 4 (reporting 0 active cases among inmates).

[5] Bureau of Prisons, "COVID-19 Cases," available at https://www.bop.gov/coronavirus/ (visited Nov. 17, 2020).

at *6 (E.D. Cal. July 7, 2020) (internal quotations and citation omitted).  Nothing in the present record clarifies the extent of testing at this time.  *Cf.* Opp'n at 4 (saying only "facility remains committed to . . . continuous testing and/or screening contractors, volunteers, staff, inmates and visitors for COVID.").

Since May of this year, several other district courts have found conditions in FCI Sheridan present high risks of coronavirus infection to inmates.  *See, e.g.*, *United States v. Dana*, No. 3:17-CR-148-SI, 2020 WL 3056791, at *4 (D. Or. June 9, 2020) ("BOP does not disclose whether or to what extent [FCI Sheridan] is testing symptomatic or asymptomatic inmates, both or neither"); *United States v. Etzel*, No. 6:17-CR-00001-AA, 2020 WL 2096423, at *4 (D. Or. May 1, 2020) (observing even when no active cases detected "at FCI Sheridan, infection can spread with deadly speed"); *United States v. Moore*, No. 3:16-CR-00171-JO, 2020 WL 2572529, at *2 (D. Or. May 21, 2020) (same); *United States v. Morris*, No. CR99-0174-JCC, 2020 WL 4344945, at *3 (W.D. Wash. June 22, 2020) ("COVID-19 can spread rapidly in [FCI Sheridan], with their tight quarters and unavoidable contact between inmates and staff, [is] the perfect breeding ground for the virus").  Taking into account all the information before it in this case, the court finds the high risk of infection at FCI Sheridan specifically, given the available pubic health data and the dormitory-style living arrangements, weighs in favor of Sharma's motion.

Mr. Sharma's health condition increases the risk he would suffer a more severe case of COVID-19 if he contracted the virus.  According to the Centers for Disease Control and Prevention (CDC) "adults of any age" with "type 2 diabetes mellitus" are at "increased risk of severe illness from the virus that causes COVID-19."  *See* Opp'n at 9 (citing CDC website).[6]  Many district courts, including this one, have granted motions for compassionate release filed by inmates with Type 2 diabetes:

/////

---

[6] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (updated Nov. 2, 2020) (accessed Nov. 9, 2020).

- *See, e.g.*, *Bradley*, 2020 WL 3802794, at *4 (E.D. Cal. July 7, 2020) (granting compassionate release, noting government agreement that "defendant's chronic health condition qualified under the policy statement in light of the risk of infection of COVID-19");
- *United States v. Patel*, No. 3:17CR164 (JBA), 2020 WL 3187980, at *3 (D. Conn. June 15, 2020) (defendant demonstrated extraordinary and compelling reasons justifying his immediate release); and
- *United States v. Rivernider*, No. 10-CR-222, 2020 WL 2393959, at *1 (D. Conn. May 12, 2020) (compassionate release justified because defendant was in high-risk group for COVID-19).

This court previously has joined other courts and concluded generally "[t]he danger of COVID-19 to high-risk individuals who are imprisoned is likely much greater than to those who are free to take their own protective measures." *See, e.g., United States v. Kabiljagic*, No. 2:14-CR-00021-KJM, 2020 WL 5905359, at *4 (E.D. Cal. Oct. 6, 2020). The court sees no reason to modify its position on this record. Accordingly, the court finds the high risk of infection and Mr. Sharma's health condition provides extraordinary and compelling reasons to grant his request under § 3582(c).

**B.      Section 3553(a) Sentencing Factors**

The applicable sentencing factors also weigh in Mr. Sharma's favor. Mr. Sharma was convicted for concealment of bankruptcy assets when he obtained funds or credit from 21 federally regulated financial institutions, and then laundered the funds into foreign banks to purchase multiple properties. *See* PSR ¶ 100. This is a serious offense, for which Mr. Sharma has suffered a conviction and served significant time. He has no other criminal history and no record of discipline in the prison. *Id.* ¶ 105; *see* Mot. at 12; Release Plan, Ex. B at 1, ECF No. 101-1.

With the assistance of the Federal Defender's Office, Mr. Sharma has proposed a release plan that, it appears, will support the Probation Office's ability to supervise and monitor him if he is released earlier than previously anticipated. The plan addresses his overall needs for housing,

finances, transportation, medical resources, counseling and mentoring and pro-social support to reduce his recidivism risk, as well as reduce the risk of infection to him and to others. *See generally* Release Plan.  He will live with his ex-wife and their two teenage children in a four-bedroom, three-bathroom home, where he will have his own private bedroom and bathroom and can follow quarantine requirements. *See id*.  The court's Probation Office has reviewed defendant's release plan and indicated his residential plans are acceptable, and does not recommend a period of home detention.  All previously ordered conditions of release will remain in effect, as will defendant's obligation to pay off his fine and restitution. *See* Judgment & Commitment, ECF No. 87.

Mr. Sharma does not have a history of violence and there is no indication he will pose a danger to his community if released earlier than previously contemplated.  The government does not dispute Mr. Sharma was on pre-trial release for 3.5 years without incident and without disciplinary incidents while in custody. *See generally* Release Plan; Order of Pre-Trial Release, ECF No. 12.  This factor weighs in favor of his motion.

At the time of this order, Mr. Sharma will have served approximately 2 years, 1 month and eighteen days; as noted above, if good time credits are applied, he is eligible for supervised release beginning January 9, 2022.  Public Inmate Data at 4.  If the court grants his motion, Mr. Sharma's sentence of incarceration will effectively be reduced by about 21 months.  Other courts have found similar sentence reductions allowable prior to completion of statutorily mandated terms. *United States v. Bess*, No. 16-CR-156, 2020 WL 1940809, at *11 (W.D.N.Y. Apr. 22, 2020), *appeal withdrawn*, No. 20-1491, 2020 WL 4496494 (2d Cir. May 29, 2020) (defendant released prior to completion of his statutorily-mandated term of 60 months, with court finding no indication in text of § 3582(c)(1)(A) courts are limited to offering compassionate release only to inmates satisfying statutory-minimum terms); *id*. n.11 (collecting cases finding same); *United States v. Ben-Yhwh*, No. CR 15-00830 LEK, 2020 WL 1874125, at *5 (D. Haw. Apr. 13, 2020) (granting motion for compassionate release, notwithstanding 60-month mandatory minimum term of imprisonment, and in that case placing defendant "on home confinement without electronic

/////

monitoring for a period of home confinement equal to the remaining term of his original sentence of incarceration" after defendant served eight months).

While the government has requested an opportunity to brief appropriate conditions, including a release plan and a period of home confinement, the court has reviewed defendant's release plan with the Probation Office and requires no further briefing. To the extent the government requests a period of quarantine be imposed prior to defendant's release from BOP, this request is denied. *See United States v. Scparta*, No. 18-578, 2020 WL 1910481, at *9 (S.D.N.Y. Apr. 20, 2020). The court does order Mr. Sharma to self-isolate for fourteen days once he arrives at his ex-wife's home.

## IV. CONCLUSION

**Defendant's motion for compassionate release is granted.**

The court modifies defendant's previously imposed sentence of incarceration of 46 months to time served. All other previously ordered terms of supervised release remain in effect.

There being a verified residence and an appropriate release plan in place, this order is stayed for up to seven days to make appropriate travel arrangements and to ensure defendant's safe release. Defendant shall be released as soon as appropriate travel arrangements are made, and it is safe for the defendant to travel. The court orders Mr. Sharma to self-isolate for fourteen days in his ex-wife's home, once he arrives there.

**Defendant's request to seal his medical records is granted.**

This order resolves ECF Nos. 101 & 102.

IT IS SO ORDERED.

DATED: November 19, 2020.

_____
CHIEF UNITED STATES DISTRICT JUDGE

9